UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                        Case Number 24-cr-20246
                                                  Honorable David M. Lawson

v.

HOUSTON J. NASH,

                Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS AND FOR OTHER RELIEF

A federal grand jury returned a superseding indictment against defendant Houston Nash charging him with possessing cocaine and cocaine base with the intent to distribute those substances and with actually distributing them on various occasions. Nash, who is representing himself per his own request, does not believe that he is subject to this Court's jurisdiction because he is a "natural living man," the Sixth Amendment's Confrontation Clause is violated because there is no "living accuser" for his alleged crimes, similarly there is no "injured party," and the government has not proven a *corpus delicti*. For these reasons and others, Nash has moved to dismiss the case against him. He also asks to vacate orders entered by the original judge assigned to this case. Because none of his arguments has merit, the motions to dismiss, challenging the Court's subject matter jurisdiction, and seeking vacation of orders will be denied.

I.

Nash was charged in an indictment with a drug crime in May 2024. At least two attorneys have been appointed to represent him under the Criminal Justice Act. Nash has made clear that he does not want their help. The Court previously held a hearing over two days to assess the defendant's request to represent himself. On December 3, 2025, following the inquiry required by

*Faretta v. California*, 422 U.S. 806 (1975), the Court determined that Nash knowingly and voluntarily waived his right to counsel and granted his request to represent himself.

Thereafter, a superseding indictment was returned on January 14, 2026 charging Nash with one count of possession with intent to distribute cocaine, one count of possession with intent to distribute cocaine base, two counts of distribution of a cocaine base, and one count of distribution of cocaine. Since then, Nash has filed several motions that contain language that embrace rhetoric commonly associated with the sovereign citizen movement. The motions challenge this Court's jurisdiction over his criminal case and seek dismissal of the indictment. They include a motion to dismiss the indictment on speedy trial grounds, a motion challenging jurisdiction and demand for dismissal, and a motion to vacate all prior orders and dismiss with prejudice.

II.

A few words are in order to address the underlying premises of the defendant's arguments. In various filings, Nash contends that he appears in this case not as himself, but as a trustee of the Houston J. Nash Irrevocable Ecclesiastical Trust, ECF No. 65, PageID.462, that he is a "living man" and the authorized representative of an "Estate known as Houston J. Nash," ECF No. 35, PageID.142, and that he "stands on the land and the soil of the Michigan Republic" and is "not a United States citizen"; instead he says that he is "a Michigan state national, and American State National, and a foreign national to the corporate United States." ECF No. 37, PageID.179. That language is emblematic of a cadre of individuals who declare their sovereignty and renounce their United States citizenship despite being natural born Americans. Many of them believe that "the United States Government, including the IRS, is a fraud and that 'they, the sovereign citizens, retain an individual common law identity exempting them from the authority of those fraudulent government institutions.'" *United States v. Gooch*, 595 F. App'x 524, 527 n.1 (6th Cir. 2014)

- 2 -

(quoting *A Quick Guide to Sovereign Citizens*, Univ. of N.C. Sch. of Gov't (Mar. 2013), http://www.sog.unc.edu/sites/www.sog.unc.edu/files/Sovereign% 20citizens% 20brief% 20guide %20Mar% 2013.pdf).

One court has observed that the arguments Nash tries to advance here "directly correspond to meritless rhetoric frequently espoused by tax protesters, sovereign citizens, and self-proclaimed Moorish-Americans." *United States v. Coleman*, 871 F.3d 470, 476 (6th Cir. 2017). According to those adherents, "the Constitution recognized three types of court jurisdiction: law, equity, and admiralty. Jurisdiction in law refers to common law, which requires an injury to a person or property before a crime or tort is committed. . . . Admiralty jurisdiction, once limited to the high seas, has illegitimately expanded[, they believe,] to include international contract and has both civil and criminal penalties." Francis X. Sullivan, *The "Usuring Octopus of Jurisdictional/Authority": The Legal Theories of the Sovereign Citizen Movement*, 1999 Wisc. L. Rev. 785, 804 (1999).

This explanation begins to cast some light on Nash's demands and his insistence that he is a "man living on the land": he wants to avoid being swept into an admiralty court. But the problem with Nash's arguments and the movement attached to them is that every court to have encountered those premises has rejected them in a variety of contexts. *See, e.g., United States v. McLaughlin*, 675 F. App'x 387, 387 (4th Cir. 2017) (per curiam) (observing that the district court perceived the defendant's behavior as the product of his defiance and adherence to Moorish Nationalist ideals, rather than any mental instability or inability); *United States v. Amir*, 644 F. App'x 398, 399 (6th Cir. 2016) (rejecting the defendant's attempts "to argue that he is not a citizen of the United States, but a citizen of the 'Republic of Ohio,' to whom our federal courts' jurisdiction does not apply"); *Rott v. Oklahoma Tax Comm'n*, 604 F. App'x 705, 708 (10th Cir. 2015) (rejecting the *pro se*

plaintiff's "trust arguments . . . that until the relevant government actor . . . establishes a commercial nexus, there is no 'taxpayer;' hence, no 'income'"); *United States v. Neal*, 776 F.3d 645, 657 (9th Cir. 2015) (holding that the defendant's "numerous comments . . . disputing jurisdiction and other 'nonsensical' issues [such as calling] the United States a corporation" along with his profession of a sovereign citizen belief system did not display a lack of competence); *United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (observing that the phrases used by the defendant "are often used by so-called 'sovereign citizens, who believe they are not subject to the jurisdiction of the courts and who frequently deny that they are the defendants in the action, instead referring to themselves as third-party intervenors' "); *United States v. Vallone*, 698 F.3d 416, 482 (7th Cir. 2012) (stating that the claim that one is a sovereign citizen and therefore not a citizen of the United States under the Fourteenth Amendment and the Code of Federal Regulations is "emblematic of tax protesters" and has been repeatedly rejected as frivolous by the courts), *judgment vacated on other grounds sub nom. Dunn v. United States*, 570 U.S. 901 (2013); *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts"); *United States v. James*, 328 F.3d 953, 954-56 (7th Cir. 2003) (disruptive defendant who claimed that he was a Moorish national and "copyrighted" his name and sent invoices to government officials who used his name did not warrant a competency hearing).

Nash's approach to his personal identity is tied to the idea that government credentials such as birth certificates embody a fictional "strawman," each with its own corresponding bank or trust account that is distinct from the "flesh-and-blood" person. Joshua P. Weir, *Sovereign Citizens: A Reasoned Response to the Madness*, 19 Lewis & Clark L. Rev. 830, 840 (2015). The strawman

operates in the commercial world, the argument goes, so only the strawman is subject to the jurisdiction of a court. *Ibid.* "But since the gold standard was abolished, [this movement asserts,] the strawman accounts have been used to secure government debt; by filing the right documents, the flesh-and-blood person can 'redeem' money from the strawman account." *United States v. Cook*, No. 18-CR-00019, 2019 WL 2721305, at *2 (E.D. Tenn. June 28, 2019) (citing J.M. Berger, Geo. Wash. Program on Extremism, *Without Prejudice: What Sovereign Citizens Believe* 6 (June 2016)).

These concepts have no basis in law or fact, and no reasonable person would subscribe to them.

III.

Turning to Nash's specific arguments for dismissal of the drug charges against him, he asserts that (1) there is no living accuser in violation of the Sixth Amendment Confrontation Clause (2) there is no injured party in violation of Article III's case or controversy requirement, (3) a member of the arresting agency is the sole witness for the government, (4) the government has not proven the *corpus delicti*, (5) he is a "natural living man" not subject to the Court's jurisdiction, (6) he has rescinded any consent obtained under coercion or distress, (7) the superseding indictment violates fundamental principles of equity and fairness, and (8) seemingly, international law supports dismissal. *See* ECF No. 46, PageID.247–73.

The arguments addressing jurisdiction are raised properly at this time. Fed. R. Crim. P. 12(b)(2). They do not persuade, however. Neither the Court's subject-matter jurisdiction nor personal jurisdiction over Nash depends on his consent, a "living accuser," or an "injured party." Nash is charged with violations of federal law, and the Court has subject matter jurisdiction over all offenses against the laws of the United States. *United States v. Titterington*, 374 F.3d 453, 458-

- 5 -

59 (6th Cir. 2004) ("The federal courts' subject-matter jurisdiction to hear federal criminal prosecutions comes from 18 U.S.C. § 3231, which grants '[t]he district courts of the United States . . . original jurisdiction . . . of all offenses against the laws of the United States.'"). The Court also has personal jurisdiction over any criminal defendant who appears before it. *United States v. Pryor*, 842 F.3d 441, 448 (6th Cir. 2016) ("Federal courts have personal jurisdiction over criminal defendants before them, whether or not they are forcibly brought into court."). Nash cannot negate the Court's jurisdiction over this criminal matter by arguing that he is not a person or is not subject to federal law. Federal courts uniformly have rejected such arguments as meritless. *See, e.g.*, *id.* at 445 n.2, 448; *United States v. Coleman*, 871 F.3d 470, 476 (6th Cir. 2017) (collecting cases). "Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts." *Ibid.* (quoting *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011)).

A related line of reasoning applies to Nash's insistence that a "living accuser" and an "injured party" are required. This transactional approach finds no provenance in the nation's criminal jurisprudence. A criminal accusation "is founded on the common-law conception of crime as an offense against the sovereignty of the government." *Heath v. Alabama*, 474 U.S. 82, 88 (1985). There is no "victim" as such when a crime is committed. Instead, a criminal "act violates the 'peace and dignity' of [the] sovereign[]." *Ibid.* The Supreme Court has explained that "a law is defined by the sovereign that makes it, expressing the interests that the sovereign wishes to vindicate." *Denezpi v. United States*, 596 U.S. 591, 597 (2022) (citing *Gamble v. United States*, 587 U.S. 678, 683 (2019)). "Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty." *United States v. Lanza*, 260 U.S. 377, 382

(1922). An indictment that does not name a "living accuser" and an "injured party" is not defective for that reason.

Nash also contends that "international legal principles" support his position that he is "not subject to federal statutory jurisdiction without his consent because "[i]nternational law recognizes the fundamental rights of individuals to be free from arbitrary prosecution and to have access to fair and impartial tribunals." ECF No. 46, PageID.272-23. He believes that "the Hague Convention on Diplomatic Immunity (1961) recognizes the principle that individuals have certain fundamental rights that cannot be violated by the government." *Id.* at PageID.272. And he references the United Nations Declaration on the Rights of Indigenous Peoples ("UNDRIP") for its recognition of "the rights of indigenous peoples to self-determination and to be free from forced assimilation." *Ibid.* None of these arguments undermine the authority of the Court to hear and decide the charges in the superseding indictment or the sovereignty of the government to prosecute Nash for the alleged drug crimes. The sovereignty of the United States is not conditioned on international legal principles, and the UNDRIP is not recognized by United States federal courts as binding legal authority. *Bey v. Terminix Int'l, L.P.*, No. 217CV02597SHLCGC, 2018 WL 3552348, at *3 (W.D. Tenn. July 24, 2018), *report and recommendation adopted*, No. 217CV02597SHLCGC, 2018 WL 4407254 (W.D. Tenn. Sept. 17, 2018); *see also Bray El v. City of Euclid*, No. 1:16CV2160, 2017 WL 2797389, at *10 n.8 (N.D. Ohio June 26, 2017) (collecting cases).

Last, Nash's arguments based on an agent as the sole witness for the government and the failure of proof of the *corpus delicti* of the charged offenses are not ripe for decision. The case has not been tried, which is where the government has an opportunity to present evidence and prove its case. Nash's criticism on an alleged failure of proof is not subject to a motion to dismiss at this

time because the Court cannot "determine [the arguments] without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).

Even if the issue were ripe, Nash's arguments would fall short.  The *corpus delicti* rule addressed a defendant's confession as a means of proof of a crime, something that does not seem to emerge here, as Nash has not suggested that he has confessed to anyone.  That doctrine at one point "guarded against convictions for imaginary crimes by requiring prosecutors to demonstrate through independent evidence that the crime occurred before they could use an accused's own statements to establish guilt."  *United States v. Brown*, 617 F.3d 857, 860 (6th Cir. 2010) (citing *Smith v. United States*, 348 U.S. 147, 153–54 (1954)).  That doctrine is outdated and has since been replaced by the "corroboration rule."  *Brown*, 617 F.3d at 860 ("Today's corroboration rule differs from its predecessor in form but not in function.").  This rule stands for the proposition that "no one may be convicted of a crime based solely on an uncorroborated confession."  *Ibid.* (citing *Opper v. United States*, 348 U.S. 84, 89 (1954)).  It remains to be seen if the government will muster more proof than Nash's own statements.

Nash's motion to challenge jurisdiction and to dismiss the indictment will be denied.

IV.

Nash also has filed a motion to dismiss his case for a violation of the Speedy Trial Act and the Sixth Amendment's speedy trial guarantee, and because the government did not give him discovery materials.

A.

"The [Speedy Trial Act] provides that a trial 'shall commence within seventy days' after the public filing of an indictment or initial appearance (whichever comes later), 18 U.S.C. § 3161(c)(1), but includes a number of exclusions from this seventy-day period."  *United States v.*

*Felix*, 850 F. App'x 374, 381 (6th Cir. 2021) (quoting 18 U.S.C. § 3161(c)(1)).  Among the periods of delay that are excludable from the 70-day period, the Act includes "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).  The Court may consider several circumstances when deciding where such an "ends of justice" exclusion is warranted, including, as pertinent here, "[w]hether the failure to grant [a] continuance . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."  18 U.S.C. § 3161(h)(7)(B)(iv).  The Speedy Trial Act also excludes any period of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(D).  The Supreme Court has held that, "when a pretrial motion requires a hearing," the Speedy Trial Act excludes "all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'"  *Henderson v. United States*, 476 U.S. 321, 329-30 (1986).

The grand jury returned the indictment in this case on May 8, 2024.  However, Nash's first appearance before the Court did not occur until January 15, 2025 (after the indictment was unsealed), when he was arraigned on the original indictment.  That appearance triggered the commencement of the speedy trial clock.  *See United States v. Richmond*, 735 F.2d 208, 211 (6th Cir. 1984) (finding that countable time begins the day of a defendant's arraignment if that was their first appearance in front of a judicial officer).  No trial date was scheduled at that time, but on

January 23, 2025, the Court issued a scheduling order, and, at the request of defense counsel, found excludable delay through June 24, 2025, and scheduled trial for that same date. ECF No. 14, PageID.28. Defense counsel stated that the amount of discovery required an extension of the case management deadlines. The Court found this request to be "reasonable" and determined that the "ends of justice served by a continuance outweigh[ed] the best interest of the public and [d]efendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

There were more requests for adjournments of the case deadlines made by defense counsel, when Nash was represented by counsel. Each time, the Court found that the delay was justified and that the time was excludable from the 70-day calculation under the Speedy Trial Act. The Court entered an order on May 19, 2025 adjourning trial and excluding time between June 24 and August 12, 2025 after the parties stipulated that (1) the defendant needed time to review the discovery materials, fully analyze the sentencing issues and consequences, and discuss the case; (2) the parties were working toward resolving the case and review of the discovery materials was necessary; and (3) failure to grant a continuance would unreasonably deny counsel for the defendant and the attorney for the government the reasonable time necessary for effective preparation and could result in a miscarriage of justice. ECF No. 18, PageID.43-45.

The Court again entered an order on July 8, 2025 after the parties submitted a stipulation that a continuance was needed because (1) the defendant's prior attorney had moved to withdraw and a new attorney had been appointed; (2) the defendant needed additional time to review the discovery materials and analyze the sentencing issues and potential consequences; (3) the parties were still working toward resolving the case and needed to continue to review discovery, and (4) failure to grant the continuance could prevent the attorneys reasonable time for effective

preparation which could result in a miscarriage of justice.  The Court adjourned the trial to October 28, 2025 and excluded the time until the new trial date.  ECF No. 24, PageID.76-78.

The most recent order adjourning the trial was entered on September 18, 2025.  The defendant still was represented by counsel at the time.  The parties submitted a stipulation that a continuance was needed because (1) the defendant needed additional time to review the discovery materials, fully analyze the sentencing issues and potential consequences, and give the Court time to consider a stipulation to conduct a pre-plea presentence guidelines calculation; (2) allow time for the parties to engage in good-faith plea negotiation; and (3) failure to grant the continuance could, once again, prevent the attorneys reasonable time for effective preparation which could result in a miscarriage of justice.  The Court found excludable delay between October 28, 2025 and February 24, 2026, the new trial date.  ECF No. 28, PageID.89–91.

On November 3, 2025, defense attorney Jeffrey Rupp filed a motion to withdraw from the case, explaining that defendant Nash desired to represent himself.  ECF No. 30.  The Court held hearings on November 20 and December 3, 2025, inquiring of the defendant his desire to waive his right to counsel.  On December 10, 2025, the Court granted the motion allowing attorney Rupp to withdraw and recognizing the defendant's self-representation.  ECF. No. 34.

On January 28, 2026, with the speedy trial clock still in suspension, Nash filed the present motion without the benefit of counsel to dismiss the indictment, arguing that his speedy trial right was abridged.  ECF No. 43.  He also filed a motion (also addressed in this order) challenging jurisdiction.  ECF No. 46.  Those motions remain pending (until now).  The case was reassigned to the undersigned on February 25, 2026.  In the meantime, the defendant and the government have filed additional motions seeking various forms of relief.

The record indicates that only eight days are to be charged against the 70 days under the Speedy Trial Act: that is, the time between the first appearance and the entry of the first scheduling order that established a trial date of June 24, 2025 and excluded time until then.  The rest of the time that has elapsed since Nash's first appearance is excluded from the 70-day time mandate by the Court's ends-of-justice findings, 18 U.S.C. § 18 U.S.C. § 3161(h)(7)(A), or the pendency of unresolved motions, 18 U.S.C. § 3161(h)(1)(D).  The Speedy Trial Act does not require dismissal of the superseding indictment.

B.

Nash also seeks dismissal as a remedy for a violation of his speedy trial right under the Sixth Amendment.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial.  U.S. Const. amend. VI.  In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court identified four factors to balance when determining if that right was abridged: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of her right to speedy trial; and (4) prejudice to the defendant. 407 U.S. at 530.  The Court must weigh these factors in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred.  *Id.* at 533.  The time is measured from when the defendant is arrested on charges and brought before the court. *United States v. Marion*, 404 U.S. 307, 321 (1971).

As to the first factor, "[d]elays of over a year 'generally' satisfy the lengthiness requirement, thereby calling for the full *Barker* analysis."  *United States v. Thornton*, 822 F. App'x 397, 403 (6th Cir. 2020) (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)).  As indicated earlier, Nash's first appearance following his arrest occurred on January 15, 2025, more than a year ago.  The Court, therefore, will analyze the remaining *Barker* factors.

"'In assessing the second factor, the reason for the delay, the court considers who is most at fault — the government or the defendant.'" *Thornton*, 822 F. App'x at 403 (quoting *Brown v. Romanowski*, 845 F.3d 703, 714 (6th Cir. 2017)).  This factor weighs against Nash.  The reasons for the delay in this case, so far as the record demonstrates, all are attributable to the defense, not the government.  The defendant cycled through two separate attorneys, each of whom needed time to get acquainted with his case, together with the defendant's filing multiple motions challenging the Court's jurisdiction.  Nash certainly is entitled to file his motion, but he may not complain that the time necessary to decide them trenched upon his speedy trial right.  When the defendant is the cause of the delay, he cannot use the delay as a basis for a speedy trial claim.  *United States v. Schuster*, 135 F.4th 1037, 1049 (6th Cir. 2025) (quoting *United States v. Young*, 657 F.3d 408, 415 (6th Cir. 2011)).  Nash also complains that the case was delayed by the government's inability to turn over discovery.  However, the government handed over discoverable materials on the record to the defendant in January of 2026 in a hearing before Magistrate Judge Morris and even offered in that same hearing to go through the discovery with him.  ECF No. 42, 17:35-22:10 (audio file including summary of government's transmission of discovery in this case).  This factor does not favor the defendant.

"The third *Barker* factor, the defendant's assertion of his right to a speedy trial, 'is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.'" *Thornton*, 822 F. App'x at 403 (quoting *Barker*, 407 U.S. at 531-32). "Although a defendant does not waive the right to a speedy trial by failing to assert it, the degree to which the defendant has asserted the right is one of the factors to be considered in the balance." *United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999) (citing *Barker*, 407 U.S. at 531-32).  This factor favors the government.  Nash asserted the right for the first time in his motion to dismiss filed on January 28,

- 13 -

2026, ECF No. 43, PageID.229 — 12 months after he first appeared to answer the charges in the indictment.  The Sixth Circuit has found that a lapse of less than five months before the assertion of speedy trial right weighed against the defendant.  *United States v. Schreane*, 331 F.3d 548, 557 (6th Cir. 2003) ("[The defendant's] four-month and three-week delay in invoking his speedy trial right weighs against him.").  Moreover, the Sixth Circuit has found that a defendant's robust motion practice, as found here, undercuts the force behind the defendant's assertion of his speedy trial right.  *See United States v. Williams,* 753 F.3d 626, 633 (6th Cir. 2014) (holding that because the defendant both expressed his desire to go to trial at the same time he sought his counsel to file numerous motions on his behalf cast doubt on the sincerity of his invocation of the right to a speedy trial); *see also United States v. Allen*, 86 F.4th 295, 306 (6th Cir. 2023) (holding that a defendant's "stop-and-go conduct"—consenting to delays, then objecting to delays, only to consent once again—undermined the sincerity of his request for a speedy trial.)  Ultimately, this factor cuts in favor of the government.

"The last *Barker* factor is concerned with the prejudice suffered by the defendant," and to carry his burden on that point the "defendant must show that 'substantial prejudice' has resulted from the delay."  *Thornton*, 822 F. App'x at 404 (quoting *Schreane*, 331 F.3d at 557; *United States v. White*, 985 F.2d 271, 276 (6th Cir. 1993)).  Prejudice must be assessed by the Court in light of the purposes of the speedy trial guarantee, which are "(1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern due to unresolved criminal charges, and (3) to minimize damage to the defense."  *United States v. Sutton*, 862 F.3d 547, 561-62 (6th Cir. 2017).  "Damage to the defense is the 'most serious'" of these considerations, *Thornton*, 822 F. App'x at 404 (quoting *Barker*, 407 U.S. at 532), but to make the required showing "the defendant must demonstrate 'how his defense was prejudiced *with specificity*,'" *ibid.* (quoting *United States v.*

*Young*, 657 F.3d 408, 418 (6th Cir. 2011)).  "When the defendant fails to 'articulate the harm caused by delay, the reason for the delay (factor 2) will be used to determine whether the defendant was presumptively prejudiced.'"  *Ibid.* (quoting *United States v. Williams*, 753 F.3d 626, 634 (6th Cir. 2014)).  Nash's showing of prejudice amounts to no more than his conclusory assertion that he has experienced "prolonged anxiety and concern, and the potential for impairment to his defense."  ECF No. 43, PageID.229.  He does not mention how his defense has been impaired.  And he, himself, is the source of most of the delay when he did not work with two separate attorneys and filed multiple pretrial motions.  "[W]hen a defendant is responsible for much of the prejudice he complains of, he cannot leverage that prejudice in his favor."  *Schuster*, 135 F.4th at 1055 (citing *United States v. DeClue*, 899 F.2d 1465, 1471 (6th Cir. 1990)).  The defendant's "threadbare" assertions to his right to a speedy trial also undermine his claims of prejudice.  *Ibid.*  Thus, this factor cuts in favor of the government as well.

Assessment of the *Barker* factors leads ineluctably to the conclusion that no Sixth Amendment speedy trial violation has occurred here.

C.

Nash also argues that the indictment must be dismissed because the government has not furnished all necessary discovery, which results in an abridgement of his rights under the Due Process Clause as recognized by *Brady v. Maryland*, 373 U.S. 83 (1963).  The government responds that it has produced all discoverable information to the defendant and even made efforts to go through the materials with him, but "[he] has yet to take the government up on its offer."  ECF No. 51, PageID.348.

In *Brady*, the Supreme Court announced the now-familiar rule that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." *Brady*, 405 U.S. at 87. That rule forms the basis of the government's general obligation to disclose exculpatory material, that is, evidence it has that is favorable to Nash and material to guilt or punishment. The government must also disclose evidence that could serve to impeach the credibility of its witnesses "by showing bias or interest." *United States v. Bagley*, 473 U.S. 667, 676–77 (1985) (rejecting constitutional distinction between impeachment evidence and exculpatory evidence); *Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (finding that "the jury was entitled to know of" evidence of any agreement between the government and its witness regarding future prosecution of that witness, where "the Government's case depended almost entirely on [that witness's] testimony"). In other words, defendants are entitled to production where "[t]he evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).

However, "[t]he *Brady* doctrine did not create a constitutional right of pre-trial discovery in criminal cases." *United States v. Presser,* 844 F.2d 1275, 1284 (6th Cir. 1988). The government "typically is the sole judge of what evidence in its possession is subject to disclosure." *Id.* at 1281. The constitutional right "to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Pennsylvania v. Ritchie,* 480 U.S. 39, 53 (1987) (plurality opinion). "Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." *Id.* at 59. Thus, absent an indication of misconduct, "the Court is entitled to rely on the Government's representations regarding whether evidence in its possession is subject to disclosure under *Brady* and *Giglio*." *United States v. Ledbetter*, No. 15-080, 2015 WL 5954587, at *6 (S.D. Ohio Oct. 14, 2015); *see, e.g.*, *United States*

*v. Carmichael*, 232 F.3d 510, 517 (6th Cir. 2000) ("[B]ecause prosecutors are officers of the court, district courts may take them at their word when they inform the court that they have reviewed specified . . . documents and that those documents do not contain material subject to compulsory disclosure under *Brady*."); *United States v. Hernandez*, 31 F.3d 354, 361 (6th Cir. 1994) (holding that the district court is entitled to accept the government's representations regarding *Brady* material absent indication of misconduct).

In his reply brief, Nash asserts that he is entitled to (1) the identity and statements of an alleged confidential informant, (2) any payment, promises, or benefits to this informant, (3) the "complete, unredacted employment and disciplinary history" of the government's expert witness, Tyler Torbet, (4) evidence of Mr. Torbet's "financial interest and bias," (5) "exculpatory statements from any witness, (6) "the fact that no independent investigation was conducted", and (7) the lack of physical evidence connecting [him] to the alleged crime scene." ECF No. 55, PageID.390. Nash has not offered any reason to suggest that such evidence actually exists, much less that the government is suppressing it or that the evidence would be favorable to him or material to his case. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000). He has not rebutted the government's representation on the record in front of Magistrate Judge Morris that it handed over all relevant discovery. ECF No. 42, 17:35-22:10. And even if there might be more disclosures to come, "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to complete failure to disclose." *United States v. Bencs*, 28 F.3d 555, 560 (6th Cir.1994). "Delay . . . violates *Brady* [only] when the delay itself causes prejudice." *United States v. Patrick*, 965 F.2d 1390, 1400 (6th Cir.1992).

Nash has not identified a due process violation that would require dismissal of the superseding indictment.

V.

In October 2025, this Court's predecessor, the Honorable Thomas L. Ludington, was charged by Michigan authorities with an alcohol-related traffic violation. On March 4, 2026, Nash filed a motion to vacate all prior orders entered by Judge Ludington and to dismiss the case, among other requests for relief. Nash argues that because Judge Ludington was a criminal defendant while adjudicating this case, (1) Nash's rights to an unbiased and fair trial were compromised under the Due Process Clause, (2) Judge Ludington's failure to recuse himself under 28 U.S.C. § 455 has somehow prejudiced the case against Nash, and (3) that a "fraud upon the Court" has been committed because Judge Ludington's arrest was not made public until five months later and because the case was transferred to the undersigned. The government responds that Judge Ludington's recusal was not required under case law and that, even if it were, vacatur of the orders is not warranted. ECF No. 69, PageID.501-04.

A fundament of due process is a "fair trial in a fair tribunal before a judge with no actual bias against the defendant." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (cleaned up); *see In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."); *United States v. Liggins*, 76 F.4th 500, 505 (6th Cir. 2023). A judge must recuse from a case "when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (per curiam) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). In making this determination, a court asks "not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016)

- 18 -

(internal quotation marks omitted) (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009)).  Similarly, Congress has declared that "a judge of the United States" must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a), such as when he has "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," *id.* at § 455(b)(1).

The entire basis of Nash's insistence on dismissal is that Judge Ludington presided over several decisions while he was facing criminal charges and therefore Nash's right to a fair and impartial tribunal under the Fifth Amendment was compromised.  ECF No. 57, PageID.422.  He asserts that a "judge who is himself a criminal defendant cannot be impartial." *Ibid.*  Nash has not cited any authority to support that contention, and this Court has found none.  That leaves Nash to offer some proof that "there is an unconstitutional potential for bias," *Williams*, 579 U.S. at 8, a tall task, since "a judge is presumed to be impartial, and the party seeking disqualification 'bears the substantial burden of proving otherwise,'" *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007) (quoting *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006)).

In the face of that challenge, Nash offers nothing more than his conjecture that a judge facing a drunken driving charge is more likely to favor the government and disfavor the defendant.  The logic of that proposition is questionable, particularly since the prosecuting authorities are sourced in separate and distinct sovereigns.  It is counterintuitive to think that Judge Ludington would favor the government in his rulings so as to curry favor with state authorities.  One might even suggest that a person in Judge Ludington's position might harbor a grudge against the government.  A more logical conclusion based on the facts before the Court is that "as an objective matter, [Judge Ludington was] likely to be neutral." *Williams*, 579 U.S. at 8.

The question of bias, which goes hand in glove with the obligation to recuse under 28 U.S.C. § 455(a), also must be viewed in context. The orders that Nash targets — the orders Judge Ludington entered in this case after his arrest — are the following:

| ECF No. | Date | Description |
|---------|------|-------------|
| 45 | Jan. 28, 2026 | Order Requiring Response to Motion to Dismiss |
| 49 | Feb. 12, 2026 | Order requiring Government's Response to Jurisdictional Challenge |
| 50 | Feb. 12, 2026 | Notice of determination of Motion Without Oral Argument |

ECF No. 57, PageID.422. All of those orders were procedural and none of them addressed substantive issues. No one could question the judge's objectivity when directing responses to motions or dispensing with oral argument.

Nash persists, however, with a fallback argument that "the concealment of Judge Ludington's arrest for nearly five months, followed by a silent, unexplained reassignment of [his] case on February 25, 2026, constitutes a fraud upon the Court." ECF No. 57, PageID.423. That argument dies aborning. "Fraud on the court is a somewhat nebulous concept usually discussed in civil cases." *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1993). It comes into play when a litigant can identify conduct "1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court." *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009) (citing *Demjanjuk*, 10 F.3d 338 at 348). None of these elements fit Nash's accusations. There was no intentional misrepresentation made by "an officer of the court," that is, an attorney, that was designed to "deceive[] the court." The Court could not deceive itself. Judge Ludington's failure to announce his arrest to litigants defrauded no one, no court, and certainly not Nash.

Nash is not entitled to vacatur of the orders he complains about, and he is not entitled to dismissal of the indictment based on the arrest of Judge Ludington or the pendency of his own criminal case before the present matter was reassigned to the undersigned.

VI.

This Court unquestionably has subject matter jurisdiction over this prosecution and personal jurisdiction over defendant Nash. There has been no violation of the Speedy Trial Act, and Nash's constitutional right to a speedy trial has not been abridged. The superseding indictment is not defective. Nash has not shown that his due process rights under *Brady v. Maryland* have been violated. Judge Ludington presiding over this case between the time of his arrest and the date of transfer of the case to the undersigned did not violate Nash's rights or compromise the prosecution.

Accordingly, it is **ORDERED** that the defendant's motions to dismiss the indictment, to challenge jurisdiction, and to vacate all prior orders and dismiss with prejudice (ECF Nos. 43, 46, 57, 83) are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: May 21, 2026